# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CARLOS E. LOPEZ-SOTO** <br> **Petitioner** | **CIVIL NO. 21-1071 (DRD)** <br> **(Related to Cr. No. 14-415 (DRD)** <br> **& Cr. No. 14-637 (DRD))** |
| v. | |
| **UNITED STATES OF AMERICA** <br> **Respondent** | |

## UNITED STATES' MOTION TO DISMISS PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255

**TO THE HONORABLE COURT:**

COMES NOW, Respondent, the United States of America through the undersigned attorneys, and to this Honorable Court very respectfully states and prays as follows:

### INTRODUCTION

Pending before the Court is Carlos E. Lopez-Soto's ("Lopez-Soto") *pro se* motion to vacate his sentence (Cv. ECF No. 1), and amended motion to vacate his sentence (Cv. ECF No. 22). On April 7, 2022, the United States filed its motion in response and to dismiss petitioner's original motion to vacate (Cv. ECF No. 16). Petitioner's amended motion to vacate rehashes the same arguments as those in his original motion, and the motion should be dismissed as well.

1

## RELEVANT FACTUAL BACKGROUND[1]

Between December 23, 2013 and June 4, 2014, Lopez-Soto was part of a group of men who committed several armed robberies in Puerto Rico. The group consisted of co-defendants Roberto Garcia-Santiago ("Garcia"), Luis Ruiz-Santiago ("Ruiz"), Juvencio Correa-Morales ("Correa"), Jesus Ramirez-Cotto ("Ramirez"), and petitioner Lopez-Soto. The men would hold-up different type of establishments, such as retail stores, bars, and fruit and vegetable vendors, often while armed, and divide the proceeds or stolen merchandise equally among the participants.

On May 4, 2014, Lopez-Soto and Garcia were driving in Lopez-Soto's burgundy Dodge Durango when they stopped by a fruit and vegetable vendor on the side of a highway in Canovanas, Puerto Rico. (Cr. ECF No. 400 at 26-27)[2](Jury Trial Exhibit 3). Lopez-Soto, armed with a firearm, exited the vehicle, and robbed the vendor at gunpoint. During a struggle with the vendor, Lopez-Soto's weapon discharged and Garcia disembarked from the Dodge Durango and assisted Lopez-Soto in subduing the vendor. Ultimately, the men stole between $50 and $60 and fled the scene. Upon fleeing the scene of the aforementioned robbery, Lopez-Soto and Garcia proceeded to rob a second fruit and vegetable vendor on the same highway. (Cr. ECF No. 400 at 28-31) (Jury Trial Exhibit 4). This time, Garcia announced the robbery and brandished the firearm. Lopez-Soto held a knife. The two men stole the vendor's money as well as bags of bananas and plantains.

On May 17, 2014, Lopez-Soto, Garcia, and Ruiz drove to Rio Grande, Puerto Rico in Lopez-Soto's Dodge Durango. The three men arrived at Kalex Communication and Garcia entered to scout the inside of the shop. Garcia exited the store, changed clothes, and reentered the store,

---

[1] The facts are recited "in the light most favorable to the jury's verdict." *United States v. Santos-Soto*, 799 F.3d 49, 57 (1st Cir. 2015). For purposes of clarity, these are the facts relevant to Lopez-Soto and the robberies in which he participated. However, the group committed several additional robberies around Puerto Rico. *See* ECF No. 412 at 93-97 (testimony of Luis Ruiz-Santiago); *see also* ECF No. 417 at 12-17 (testimony of Roberto Garcia-Santiago).
[2] Reference to the docket entry of Criminal No. 14-415 will be (Cr. ECF No.).

accompanied by Lopez-Soto, who had a knife. The two men announced the robbery, subdued the employees, and fled the scene with bags of cellphones, chargers, covers, and other items of value. (Cr. ECF No. 400 at 32-42) (Jury Trial Exhibit 6).

On May 23, 2014, Lopez-Soto and Garcia were in Lopez-Soto's Dodge Durango searching for a store to hold-up. The men arrived at Puerto Rico Cellular Zone, Inc. in Arecibo, Puerto Rico and exited the vehicle. Both men entered the store and Lopez-Soto, armed with a .38-caliber revolver, announced the hold-up. The men fled the scene of the robbery with a trash bag full of cell phones, chargers, and other items of value. (Cr. ECF No. 400 at 46-53) (Jury Trial Exhibit 9).

On June 3, 2014, Lopez-Soto and Garcia were in Lopez-Soto's Dodge Durango driving around Lares, Puerto Rico. The men arrived at Wasabi Technology Group Corp., parked, and exited the vehicle. The two men agreed to have Garcia announce the robbery and hold the .38-caliber revolver while they robbed the store. The men restrained the employees with wrist straps and fled the scene with cell phones, chargers, covers, and money. (Cr. ECF No. 400 at 59-63) (Jury Trial Exhibit 11). After the robbery, the two men drove to the home of Garcia's mother in Lares and left the Dodge Durango there. The men then drove to Rio Piedras, Puerto Rico in Garcia's mother's vehicle and split the stolen merchandise equally before parting ways.

On June 4, 2014, the two men and Lopez-Soto's wife boarded Garcia's Honda Accord returned to Lares to retrieve Lopez-Soto's Dodge Durango. During the drive, the men decided to paint the Durango black in order to conceal the vehicle from detection. The two men arrived at the residence and painted the Durango black. However, the men failed to paint the roof of the car and the Durango was readily identifiable by police. Law enforcement officials detained them shortly thereafter.

## RELEVANT PROCEDURAL BACKGROUND

On June 2, 2014, Lopez-Soto was indicted and charged with one count of interference with commerce by robbery, in violation of 21 U.S.C. § 1951(a); one count of possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(a)(A)(ii), and two counts of being a convicted felon in possession of a firearm and/or ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Cr. ECF No. 20). AFPD Jesus A. Hernandez-Garcia ("counsel Hernandez") was appointed to represent Lopez-Soto. (Cr. ECF No. 11).

On October 22, 2014, Lopez-Soto was indicted in a separate case, Cr. Case No. 14-637 (GAG). Lopez-Soto was charged with one count of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. § 1962(c); two counts of interference with commerce by robbery, in violation of 21 U.S.C. § 1951(a); one count of possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(a)(A)(ii), and two counts of being a convicted felon in possession of a firearm and/or ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Cr. Case No. 14-637 (GAG), ECF No. 3). On November 6, 2014, counsel Hernandez appeared in record as Lopez-Soto's attorney. (Cr. Case No. 14-637 (GAG), ECF No. 23).

On February 6, 2015, Lopez-Soto filed a *pro se* motion requesting the Court to withdraw counsel Hernandez from his legal representation in Cr. Case No. 14-415 (DRD), and to appoint a new counsel. (Cr. ECF No. 85). The Court deferred on deciding the motion filed by Lopez-Soto, until the Court received a psychological/psychiatric evaluation of defendant. (Cr. ECF No. 96).

On March 17, 2015, counsel Hernandez-Garcia filed a motion to withdraw as attorney for Lopez-Soto. (Cr. ECF No. 123). On March 23, 2015, the Court stated that it would grant motion to have defendant mentally evaluated. (Cr. ECF No. 130).

On June 30, 2015, the Court informed the parties that after the mental evaluation of Lopez-Soto, he was deemed competent. (Cr. ECF No. 170; *see*, Cr. ECF No. 158, Psychiatric Report). On July 17, 2015, counsel Hernandez filed a second motion for withdrawal in which he indicated that Lopez-Soto would not follow the advice of counsel regarding his case. (Cr. ECF No. 175 at 2).

On July 28, 2015, the Court granted counsel Hernandez request to withdraw his representation of Lopez-Soto in Cr. Case No. 14-637(GAG), ECF No. 145. On the same date, CJA Marie L. Cortes-Cortes ("counsel Cortes") was appointed to represent Lopez-Soto in Cr. Case No. 14-637(GAG), ECF No. 149.

On August 28, 2015, counsel Hernandez was withdrawn from representation and CJA Kendys Pimentel ("counsel Pimentel") was appointed to represent Lopez-Soto in Cr. Case 14-415 (DRD) (Cr. ECF No. 193).

On February 24, 2016, petitioner's two criminal cases 14-415 (DRD) and 14-637 (GAG) were consolidated. (Cr. ECF No. 221).[3]

On April 12, 2016, Lopez-Soto filed a motion to compel his attorneys to file over 25 *pro se* motions previously filed by the petitioner. (Cr. ECF No. 243).

In November 2016, the Court held two hearings to evaluate Lopez-Soto's requests for waiver of the right to counsel and self-representation at trial. (Cr. ECF No. 446, and 447). After conducting a thorough examination of Lopez-Soto, the Court allowed petitioner to proceed to trial representing himself with standby counsels Pimentel and Cortes. (Cr. ECF No. 447). As stated

---

[3] On February 26, 2016, pursuant to the order granting consolidation, the case 14-637 (GAG) was transferred to the docket of Honorable Judge Daniel R. Dominguez, who presided over case 14-415 (DRD). (Cr. No. 14-637 (GAG), ECF No. 231).

previously, Lopez-Soto had filed multiple *pro se* motions to the Court while having legal representation of counsel.[4]

Lopez-Soto proceeded to trial conducting his self-defense, which involved jury selection, cross and direct examination of witnesses, making objections, the introduction of exhibits and testimony of witnesses, determining case strategy and presentation, making Rule 29 arguments, in essence, the complete litigation of his case with the assistance of standby attorneys which were conferred when the petitioner deemed necessary. (Cr. ECF Nos. 400, 401, 405, 408, 411, 412, 413, 417, and 436-440).

On December 19, 2016, a jury returned verdicts of culpability against Lopez-Soto on counts 1, 2, 3, and 4 of Cr. Case No. 14-415 and counts 1, 14, 15, 16, and 17 of Cr. Case No. 14-637. (Cr. ECF No. 433).

On May 26, 2017, Lopez-Soto was sentenced to 360 months of imprisonment as to count one in Cr. Case No. 14-415 and counts 1, 14, and 15 in Cr. Case No. 14-637, to be served concurrently with each other but consecutively to an imprisonment term of 84 months of imprisonment as to counts 2, 3, and 4 in Cr. Case No. 14-415 and count 17 in Cr. Case No. 14-637, and consecutively to 300 months of imprisonment as to count 16 in Cr. Case No. 14-637 for a total imprisonment term of 744 months.

Petitioner appealed and the Circuit Court stated: "the district court – in sentencing Lopez-Soto to 360 months for Count One of Case No. 14-cr-415 and Counts One, Fourteen, and Fifteen

---

[4] In Cr. Case No. 14-637(GAG), Lopez-Soto filed ECF Nos. 57, 77, 143, 234-248, 253-255, 259-262, 265, 271, 276-280, 284, 287, and 290; and in Cr. Case No. 14-415 (DRD), the petitioner filed ECF Nos. 63-68, 70, 85, 89, 99, 101, 104, 128, 131, 138, 145, 147, 153, 171, 176, 177, 195, 213, 227-239, 241, 243-245, 257, 260-264, 272, 276, 283, 284, 286, 288-301, 304, 305-307, 332, 339-347, and 352-367.

of Case No. 14-cr-637 – exceeded the statutory maximum of 240 months for these offenses." *See* 18 U.S.C. §§ 1951(a) and 1963(a)." (Cr. ECF No. 575 at 32).

On May 21, 2020, Lopez-Soto's judgment was affirmed in part, vacated in part, and remanded in part by the First Circuit Court of Appeals. (Cr. ECF No. 575).

### DISCUSSION OF PETITIONER'S AMDED MOTION

In his amended motion, Petitioner simply rehashes the same arguments that he filed in his original petition. We will review them, and discuss why they remain without merit.

**1. Issues Raised By Petitioner Regarding His Pretrial Pro Se Motions**

Lopez-Soto relays ineffective assistance of counsel regarding certain pretrial issues. Specifically, he claims: 1) counsel were ineffective for refusing to file certain motions; 2) the Court incorrectly denied his *pro se* motions; 3) counsel were ineffective for failing to adopt and refile his motions. (Civ. ECF 22-2, p. 2).

While assisted by counsel, during pretrial proceedings the Court discussed and even ruled on Lopez-Soto's *pro se* pretrial motions. (*See,* Cr. ECF 446). The petitioner does not have a right to an attorney that would bring forward all the claims that he wants to advance. Defense attorney only has to bring forth those claims that have merit.

"Trial strategy includes the decision not to file certain motions if, after investigation, [counsel decides that] doing so would not be necessary or advantageous." *United States v. Hinds*, 2 F. App'x 420, 423 (6th Cir. 2001). For example, "failure to bring a meritless suppression motion cannot constitute ineffective assistance." *Brown v. McKee*, 231 F. App'x 469, 475 (6th Cir. 2007) (*quoting United States v. Tisdale*, 195 F.3d 70, 73-74 (2d Cir. 1999)).

7

During the pretrial stage of the case, and while Lopez-Soto was still represented by counsels, Lopez-Soto, as admitted in his motion (Cv. ECF No 1-2 at 45) took upon himself to file a multitude of *pro se* motions to the Court. (*See* Cr. ECF No. 446 at 3-7). Although Lopez-Soto claims that he was abandoned by counsel with respect to pretrial claims, the truth is that the vast majority of his motions were denied. On June 7, 2016, counsels Pimentel and Cortes filed a motion to inform the Court "that all motions filed *pro se* had been discussed with Mr. Lopez-Soto." (Cr. ECF 257 at 1). Lopez-Soto's counsels Pimentel and Cortes indicated that "some motions had already been re-filed by counsel with the Court" and that Lopez-Soto was appraised of all legal matters concerning his motions. *Id.* The Court admonished Lopez-Soto on many occasions for filing *pro se* motions while having an attorney. (Cr. ECF No. 270). However, the Court discussed Lopez-Soto's motions in various pretrial proceedings and even held hearings to address the motions filed by Lopez-Soto. On November 7, 2016, the Court held a motion hearing, in which it stated that "it sounds to the Court that [Lopez-Soto] is misrepresenting his right to defend himself because none of these motions make any sense." (*Id.* at 3).

Accordingly, Lopez-Soto fails to demonstrate ineffectiveness of counsels submitting or arguing pretrial issues. Most of his motions were meritless. As stated by the Court, Lopez-Soto did not show any deficiency of his attorneys. Thus, he fails to show that counsels were deficient or that he suffered any prejudice as a consequence of counsels' handling of his case during the pretrial stage.

2. **Waiver of Right to Counsel and Self-Representation at Trial**

Lopez-Soto further argues that his counsels' ineffective assistance made him lose trust in the attorneys, so he waived his right to counsel and went *pro se* to trial much to his misfortune. Specifically, he argues that: 1) the Court was incorrect to allow him to represent himself at trial;

2) the Court committed reversible error by not providing proper *pro se* litigant warnings; 3) counsel covered up the Court's error by requesting a subsequent hearing on the *pro se* issue; 4) the Court admitted it had committed reversible error. (Civ. ECF 22-2, pp. 3-4).

The Sixth Amendment guarantees criminal defendants the right to representation by counsel. In 1975, the Supreme Court held that the structure of the Sixth Amendment necessarily implies that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. *See Faretta v. California*, 422 U.S. 806 (1975). Thus, an unwilling defendant may not be compelled by the government to accept the assistance of a lawyer.

A defendant's right to self-representation in federal criminal proceedings is codified in 28 U.S.C. § 1654. Section 1654 states that: 'in all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

Any waiver of the right to counsel must be knowing, voluntary, and intelligent. The *Faretta* court stated that "a defendant need not have the skill and experience of a lawyer, but should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and "the choice is made with eyes open." *Id*. at 835. *See also United States v. Jones*, 778 F.3d 375, 389-90 (1st Cir. 2015); *United States v. Kneeland*, 148 F.3d 6, 11 (1st Cir. 1998). There is no formula regarding the information a defendant must possess in order to make an intelligent choice. *See Iowa v. Tovar*, 541 U.S. 77 (2004). However, "the presiding judge should conduct some sort of inquiry bearing upon the defendant's capacity to make an intelligent choice." *United States v. Plattner*, 330 F.2d 271, 276 (2d Cir. 1964). In such cases "statements by defendants, made after the decision to assign counsel or not to assign counsel has

been made, constitute admissions to be given due consideration on the issue of whether or not the defendant knew what he was doing." *Id.* at 276.

Determining whether a waiver of counsel is intelligent depends on "a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Tovar*, 541 U.S. at 89 (*quoting Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)).

In terms of the complexity of the case, the Court provided Lopez-Soto with the benefit of two learned counsels for trial which he conferred and consulted throughout the entire proceeding. (*See,* Cr. ECF Nos. 400, 401, 405, 408, 411, 412, 413, 417, 436, 437, 438, 439, and 440). Regarding Lopez-Soto's education and sophistication, the Court considered petitioner "a very intelligent person". (Cr. ECF No. 515 at 9). The Court indicated that it "recognizes that the defendant while he has been in prison has acquired a great deal of education, and I congratulate him for that. As he – I stated at the beginning he is, if not the most intelligent defendant I have had, he also has been very well behaved." (*Id.* at 43). During the hearing for determining if petitioner was capable of self-representation, the Court recognized that Lopez-Soto had been wanting to self-represent for approximately two years. (Cr. ECF No. 447 at 42).

Lopez-Soto was emphatically explained by the Court of the dangers of self-representation at trial. During the hearing held on November 7, 2016, the Court ordered Lopez-Soto's attorneys Pimentel and Cortez to serve as standby counsels at trial to protect Lopez-Soto's constitutional rights, specifically, to be mindful of self-incrimination in the presence of the jury. (Cr. ECF No. 446 at 3-5). The Court repeatedly warned Lopez-Soto about his lack of legal training and experience evidenced by various erroneous *pro se* motions filed by the petitioner. (*Id.* at 2-3, 5-7). The Court held yet another hearing on November 28, 2015, to explain to Lopez-Soto the

implications of renouncing to his constitutional rights. (Cr. ECF No. 447 at 3-4). The Court fully explained to Lopez-Soto the constitutional right to have counsel and the constitutional right to defend himself *pro se*. (*Id.* at 3). The Court explained to Lopez-Soto the dangers and disadvantages of *pro se* defense, such as unfavorable consequences in terms of sentence since he was exposed to life imprisonment. (*Id.* at 4-5). At said hearing, Lopez-Soto acknowledged having understood the consequences of his self-representation at trial.

THE COURT:    Now, I have a concern that you might properly or poorly represent yourself. But it is your constitutional right who has the choice of whether to have a lawyer or do it yourself. The Court will not interfere, not even in the middle of the trial, notwithstanding if you are taking decisions that I think are in your detriment. You may, in the heat of battle, state questions or state to the jury questions that may cause you to be ultimately found to be guilty.

If the trial results is not favorable to you, sir, you cannot blame standby counsel or the Court or the Government for your own choosing to proceed pro se. If you proceed pro se, it will be you who will be talking to the jury and the Court, and you might compromise your right against self-incrimination because you are stating facts which may or may not self-incriminate you or provide information to the jury which they may later use it against you and those statements the Government and the Court should not have been otherwise disclosed to the jury.

Standby counsels will be available to assist you when you request help, but they are not assigned to substitute you. When you decide the need, you may ask for standby counsel. But standby counsel will not be available to blindly

11

|  |  |
|---|---|
| | follow your requests. |
| | Do you understand that? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Okay. So, having been advised what are the downfalls of your pro se request, I want to make sure that you understand the waiver of your right to counsel. Do you understand that you will be waiving your right to counsel? Speak it. Say yes or no. |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Thank you. |
| | And what entails to exercise your right to represent you. So, sir, I ask you if you want to remain with counsel or wish to proceed pro se and if that choice is done freely. |
| | You're not being obligated to choose either one and it is your choice to make. Do you understand that? |
| THE DEFENDANT: | Yes, Your Honor. |

(*Id.* at 7-8).

The Court indicated that Lopez-Soto was declining the Court appointed learned counsels Pimentel and Cortes.

| | |
|---|---|
| THE COURT: | … Said counsel had [sic] the technical legal knowledge and training to properly to represent you, and you do not have that training. It is more probable than not that because of your self-representation you might face unfavorable consequences at trial. You are accused of serious felonies that carry up to life in prison. But, on the other hand, you are willing to have the |

12

lead under your control over your own defense and present your own defense --over your own defense and present your defense. You're authorized -- you're authorized, therefore, to act as if you were a lawyer.

(*Id.* at 5).

The Court explained to Lopez-Soto that he failed to demonstrate that his lawyers were deficient in protecting his constitutional rights. (*Id.* at 11). As stated by the Court, Lopez-Soto does not have a right to change his lawyers simply because he dislikes them. (*Id.*). The Court even pointed out that the attorneys won an important part of his case regarding the exclusion of evidence. (*Id.* at 12). The Court even offered more time to Lopez-Soto to think about his decision to legally represent himself at trial but Lopez-Soto refused any additional time to ponder his decision. (*Id.* at 12). Even the government requested Lopez-Soto to clearly state his waiver for the record.

THE DEFENDANT: Well, Your Honor, I would like to proceed pro se.

THE COURT: All right. So nobody has threatened you. That's your decision and your decision alone.

THE DEFENDANT: I would like to proceed pro se, Your Honor.

THE COURT: Okay. Hold it. And you understand that they cannot speak unless you want them as advisors. They don't become second and third lawyers when you fail. They don't substitute you. You understand that; right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Fine. So we continue. All right.

MR. ACEVEDO: May I, Your Honor?

THE COURT: Yes.

13

| | |
|---|---|
| MR. ACEVEDO: | One last statement to defense by the Court that we request; that he state for the record that he specifically waives his right to counsel. |
| THE COURT: | Okay. Well, yes. You are specifically -- I want you to be aware, you can't have it both -- the best of two worlds. You are specifically waiving your right to counsel. You understand that? |

THE DEFENDANT: Yes, Your Honor. Under the circumstance, yes.

(*Id*. at 13).

Thus, Lopez-Soto cannot argue that he was forced into self-representation. "Logically, a defendant cannot waive his right to counsel and then complain about the quality of his own defense." *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008); *see also Holmes v. United States*, 281 F. App'x 475, 480-81 (6th Cir. 2008) (rejecting an argument that standby counsel's failure to act constituted ineffective assistance). The record reflects that his decision to proceed to trial *pro se* was knowingly, voluntarily and intelligent as evidenced by the colloquy with the Court in the hearing held on November 28, 2016. (Cr. ECF No. 447). The Court more than diligently made Lopez-Soto aware of the dangers and disadvantages of self-representation. The record clearly established that Lopez-Soto knew what he is doing and his choice was made with his eyes wide opened.

In addition, counsels Pimentel and Cortes were assigned as standby legal representation before and during trial. Lopez-Soto conferred with his standby attorneys on multiple occasions during trial about a variety of issues pertaining to cross and direct examination of witnesses, making trial objections, the introduction of exhibits, presenting evidence and testimony of witnesses, advancing Rule 29 arguments, and many other legal matters. (*See,* Cr. ECF Nos. 400, 401, 405, 408, 411, 412, 413, 417, 436, 437, 438, 439, and 440).

Lopez-Soto cannot choose to represent himself and then claim that he suffered harm for not having legal representation. The First Circuit Court stated: "evidence of Lopez-Soto's guilt (describe above) – including testimony by cooperating co-defendant Garcia-Santiago, video recordings, items seized from Lopez-Soto and his girlfriend, and other physical evidence connecting Lopez-Soto to the robberies – was overwhelming." (Cr. ECF No. 575 at 13).

Lopez-Soto fails to show that his attorneys were deficient or that any prejudiced suffered as a result of his decision to *pro se* representation is a consequence of his attorneys' inefficiency. Therefore, the petitioner's claim id devoid of all merit.

### 3. Claims Against Appellate Counsel

Lopez-Soto relays ineffective assistance of counsel regarding certain pretrial issues. Specifically, he claims: 1) appellate counsel failed to warn him of his decision of self-representation; 2) appellate counsel failed to raise the self-representation issues on appeal; 3) appellate counsel failed to raise the statutory maximum argument, thereby causing the Government to cite the issue on appeal. Lopez-Soto relays ineffective assistance of counsel for failure to raise certain pretrial and appeal issues. (Civ. ECF 22-2, pp. 4-5).

Regarding his appeals claim, Lopez-Soto does not present any evidence to sustain his allegation. Although the decision whether to appeal rests solely with a criminal defendant, subsequent decisions about which issues to raise on appeal rest with counsel, who is better suited to estimate the probability of success on any given argument. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *see also Coleman v. Mitchell*, 268 F.3d 417, 430-31 (6th Cir. 2001) (holding that counsel is not ineffective for refusing to litigate every conceivable issue). "The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence

of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). A petitioner that brings a claim based on counsel's failure to raise a particular claim "must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (*quoting Smith v. Robbins*, 528 U.S. 259, 289 (2000).

Lopez-Soto in his petition harps on the fact that his appellate attorney failed to raise the self-representation issues on appeal. The raising of these issues would have been fruitless, as they are without merit. Therefore, it is likely that these issues were not raised because appellate counsel, just as this Court, realized that Petitioner's rights were protected and nothing improper occurred.

Furthermore, Lopez-Soto's appeals counsel obtained a successful result regarding his sentence, since the district court's judgment was affirmed in part, vacated in part, and remanded in part by the First Circuit Court of Appeals. (Cr. ECF No. 575). The Circuit Court stated: "the district court – in sentencing Lopez-Soto to 360 months for Count One of Case No. 14-cr-415 and Counts One, Fourteen, and Fifteen of Case No. 14-cr-637 – exceeded the statutory maximum of 240 months for these offenses." *See* 18 U.S.C. §§ 1951(a) and 1963(a)." (Cr. ECF No. 575 at 32).

Thus, Lopez-Soto fails to present evidence of his appellate counsel's ineffectiveness. On the contrary, his counsel seemed to be quite effective since Lopez-Soto's sentence was substantially reduced on appeal. Thus, Lopez-Soto's claim is meritless.

### 4. Lopez-Soto is not entitled to an evidentiary hearing.

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003). Where the § 2255 petition is presented to a court already familiar with the defendant, the court "is at liberty to employ the knowledge

16

gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is not required when the § 2255 petition "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." *Moreno-Morales*, 334 F.3d at 145 (*quoting United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978)). Lopez-Soto does not meet the burden necessary to hold an evidentiary hearing. Lopez-Soto allegations of ineffective assistance are premised on incorrect legal conclusion and were factually contradicted by the record. Accordingly, Lopez-Soto's petition for an evidentiary hearing should be denied.

### 5. No certificate of appealability should be issued.

Lopez-Soto cannot establish that his counsels' performance was deficient, nor that it prejudiced him. He also fails to establish that his conviction is otherwise invalid. Because Lopez-Soto has failed to make a substantial showing of a denial of a constitutional right, the Court should decline to issue a certificate of appealability in the event Lopez-Soto makes such a request.

**WHEREFORE**, in view of the foregoing the United States respectfully requests that both Lopez-Soto's motion and his supplementals be denied and the case dismissed with prejudice. The government further requests that in the event Lopez-Soto requests a certificate of appealability, the same be denied.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this July 7, 2023.

                                           W. Stephen Muldrow
                                           United States Attorney

                                           /s/ *Timothy R. Henwood*
                                           Timothy R. Henwood-218608
                                           Assistant United States Attorney
                                           United States Attorney's Office
                                           Torre Chardón, Suite 1201
                                           350 Carlos Chardón Ave.
                                           San Juan, Puerto Rico 00918
                                           Tel. (787) 766-5656

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing document was uploaded today, July 7, 2023 into the Court's website using the CM/ECF system and a copy served upon the person listed below by depositing in the United States Post Service in an envelope with correct postage for delivery.

                             Carlos E. Lopez-Soto
                             Reg. No. 44424-069
                             USP Terre Haute
                             U.S. Penitentiary
                             P.O. Box 33
                             Terre Haute, IN  47808

                                           s/ *Timothy R. Henwood*
                                           Assistant United States Attorney